UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BERNARDINO GINO SANDOVAL,

Plaintiff,

v.

MIKE OBENLAND, et al.,

Defendants.

CASE NO. 3:17-cv-05667-RJB-DWC

REPORT AND RECOMMENDATION

Noting Date: February 15, 2019

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Plaintiff Bernardino Gino Sandoval, proceeding *pro se* and *in forma pauperis*, initiated this civil rights action on August 24, 2017.

Plaintiff alleges his equal protection rights were violated because Defendants have a policy that forbids marriage between fellow prisoners, and thereby discriminates against individuals who want to marry a person of the same gender. He also alleges that, when his marriage application to marry a fellow prisoner was denied, he contracted several mental health conditions that were not adequately addressed by Defendants. However, the policy Plaintiff challenges is not a violation of his equal protection because, on its face, it prohibits any prisoner

1    from marrying a fellow prisoner, regardless of the fellow prisoner's gender. Further, Defendants

2    have shown that the policy is reasonably related to a legitimate penological goal, and so

3    Defendants' did not violate Plaintiff's rights in implementing it. Finally, Plaintiff has failed to

4    provide adequate evidence showing Defendants knew of, yet disregarded, Plaintiff's serious

5    medical needs. Therefore, the Court recommends Defendants' Motion for Summary Judgment

6    ("Motion") (Dkts. 50, 66) be granted and Plaintiff's action dismissed.

7    **I.    Background**

8         Plaintiff filed his Complaint on August 24, 2017. Dkt. 1. He argues that his constitutional

9    rights were violated because Defendants instituted a policy prohibiting prisoners from marrying

10    other prisoners in the Department of Corrections' ("DOC") custody, which allegedly

11    discriminated against prisoners who wanted to marry a person of the same gender. *Id*. Plaintiff

12    alleges he attempted to file a request for a marriage license with the DOC to marry a fellow

13    inmate. *Id*. His request was denied, and Plaintiff was allegedly then separated from his would-be

14    spouse, placed in segregation, and denied mental health treatment in retaliation for filing the

15    request. *Id*. Plaintiff alleges his equal protection rights were violated because of the

16    discriminatory nature of the policy, he was unlawfully retaliated against in violation of the

17    Constitution, and his Eighth Amendment rights were violated when he was denied medical and

18    mental health care. *Id*.

19         Defendants filed a Motion for Summary Judgment, addressing Plaintiff's Fourteenth

20    Amendment and retaliation claims. Dkt. 50. However, Plaintiff stated in his Response that

21    Defendants had neglected to address his Eighth Amendment claims. Dkt. 63. The Court directed

22    the parties to file supplemental briefing addressing only the Eighth Amendment allegations. Dkt.

23    65. Both parties have now done so. Dkts. 66, 69.

24

## II.    Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (*citing Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is

1    "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific*

2    *Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

3    Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a

4    grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some

5    'significant probative evidence tending to support the complaint.'" *Id.* (*quoting Anderson*, 477

6    U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No

7    longer can it be argued that any disagreement about a material issue of fact precludes the use of

8    summary judgment."). In other words, the purpose of summary judgment "is not to replace

9    conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

10   *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly

11   support an assertion of fact or fails to properly address another party's assertion of fact as

12   required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting

13   materials--including the facts considered undisputed--show that the movant is entitled to it[.]"

14   Fed R. Civ. P. 56(e)(3).

15   **III.    Discussion**

16       A.    Fourteenth Amendment Equal Protection

17       The Fourteenth Amendment's equal protection clause "is essentially a direction that all

18   persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Center*,

19   473 U.S. 432, 439 (1985). To assert a claim under equal protection, plaintiff must show that he

20   was similarly situated to other defendants who received preferential treatment. *See Fraley v.*

21   *Bureau of Prison*, 1 F.3d 924, 926 (9th Cir. 1993). Thus, plaintiff must show: 1) he is a member

22   of a protected class; and 2) he was being intentionally treated differently from a similarly

23   situated class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976); *Draper v. Rhay*, 315 F.2d

24   193, 198 (9th Cir. 1963). For equal protection purposes, a "protected class" is a group

1    "comprised of similarly situated persons so that the factor motivating the alleged discrimination

2    can be identified." *Thornton*, 425 F.3d at 1167 (citing *Freeman v. City of Santa Ana*, 68 F.3dc

3    1180, 1187 (9th Cir. 1995). Hence, for plaintiff to prevail on an Equal Protection Clause claim,

4    plaintiff must not only show differential treatment by defendants, but also that defendants

5    intentionally or purposefully discriminated against him.

6    However, "[w]hen a prison regulation impinges on inmates' constitutional rights, the

7    regulation is [still] valid if it is reasonably related to legitimate penological interests." *Turner v.*

8    *Safley*, 482 U.S. 78, 89 (1987). First, the Court must consider whether there is a "valid, rational

9    connection" between the prison officials' actions and a legitimate government interest put

10   forward to justify it. *Id*. "[I]f the prison fails to show that the regulation is rationally related to a

11   legitimate penological objective, we do not consider [any] other facts." *Ashker v. Cal. Cep't of*

12   *Corr.*, 350 F.3d 917, 922. If there is a valid connection, the Court then considers whether there

13   are "alternative means of exercising the right that remain open to prison inmates." *Turner*, 482

14   U.S. at 90. Next, the court considers what the impact will be on other prisoners and prison

15   officials if the prisoner's request is accommodated. *Id*. Finally, the Court should examine

16   whether there are ready alternatives that prison officials have to effectuate their legitimate

17   penological goal. *Id*. "[T]he absence of ready alternatives is evidence of the reasonableness of

18   the prison regulation." *Id*. In addition, the Court entertains a presumption that prison officials

19   have acted within their "'broad discretion'" when enacting prison policy. *Shaw v. Murphy*, 532

20   U.S. 223, 232 (2001) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989)).

21        1.   *Right to Marry Generally*

22   In Plaintiff's Response, Plaintiff states he was denied the "equal rights afforded to all

23   other similarly situated individuals who are allowed to marry." Dkt. 63, p. 4. However, Plaintiff

24

1   is not similarly situated to all other individuals who are allowed to marry. Rather, he is a prisoner

2   and, though his constitutional rights were not eliminated because of his incarceration, his rights,

3   including his right to marry, may be limited so long as the limitation is non-discriminatory and

4   supports a valid penological interest. *See Turner*, 482 U.S. at 89. Thus, to the extent Plaintiff

5   argues his right to marry has been infringed because non-prisoners are allowed to marry and he is

6   not, Plaintiff is not similarly situated to those non-prisoners and Plaintiff's argument is not

7   persuasive.

8       *2. Discrimination Based On Sexual Orientation*

9       Plaintiff alleges that he is part of a protected class because the marriage policy

10  discriminates against prisoners who intend to marry members of the same gender, and Plaintiff

11  filed an application to marry a fellow prisoner of the same gender. However, the record before

12  the Court refutes that allegation. The current policy provides a means for offenders to marry or

13  enter into domestic partnerships, and states "[m]arriage between 2 offenders in Department

14  facilities is prohibited." Dkt. 51-1, p. 3. The policy also requires that "[o]ffender marriages must

15  comply with RCW 26.04." Dkt. 51-1, p. 3. Finally, the policy states "[b]oth the offender and the

16  intended spouse/state registered domestic partner must be eligible to legally marry or enter into a

17  state registered domestic partnership in Washington State." *Id*. Plaintiff alleges, and Defendants

18  concede, that a previous iteration of the marriage policy required a prisoner's intended spouse to

19  be on the prisoner's approved visitor's list. *See* Dkt. 50, p 2. It is undisputed that same-sex

20  couples are legally allowed to marry in the State of Washington.

21      Though Plaintiff alleges the policy discriminated against prisoners who intended to marry

22  spouses of the same gender, there is nothing on the record indicating the marriage policy was

23  only restricting same-sex marriages. Indeed, by its own words, both the former and current

24

policy would also prohibit a male prisoner from marrying a female partner if she was also being held in a DOC facility. *See* Dkt. 51-1. The Court does not find that either the current policy or the previously iterated policy prohibited the marriage of a prisoner to a spouse of the same gender – only marriage of a prisoner to a fellow prisoner, or marriage not recognized by Washington law, regardless of gender. Therefore, facially, the marriage policy did not explicitly forbid same-sex marriage and so the Court finds, to the extent Plaintiff argues the policy explicitly forbade same-sex marriage, the undisputed facts indicate otherwise. Accordingly, the Court recommends Defendants' Motion for Summary Judgment be granted to the extent Plaintiff argues the marriage policy explicitly discriminates against same-sex couples and Plaintiff's claims should be dismissed to the extent they argue Defendants' policy explicitly forbade same-sex marriage.

3.    *Policy Pursuant to* Turner v. Safley

Plaintiff also argues the marriage policy is not reasonably related to a legitimate penological interest, making its enforcement unconstitutional under *Turner v. Safley*. Under *Turner*, the Court first must examine whether the challenged prison regulation is reasonably related to a legitimate penological interest. *Turner*, 482 U.S. at 89. Here, Defendants have provided evidence that Washington law requires both partners to be physically present in order to marry. Dkt. 51, Stewart Decl., ¶5. Thus, Defendants argue the prohibition on fellow prisoners marrying relates to the impracticality of transferring prisoners for marriage ceremonies, as well as the security concerns surrounding the transfer of prisoners. Defendants have also provided evidence that prisoners who are allowed to marry would be required to have a "keep separate" order placed on them in order to ensure the prisoners would not engage in sexual conduct – a serious prison violation. *Id*. at ¶6 (citing WAC 137-25-030(504)). Defendants have provided

1  evidence that allowing prisoners to marry fellow prisoners would give rise to safety and security

2  concerns because some prisoners could coerce other prisoners into marriage and there are

3  categories of prisoners that would become more vulnerable to sexual assault as a result. *Id*. at ¶7.

4  Finally, Defendants have provided evidence that the prohibition on fellow prisoners marrying

5  each other is related to cost and safety concerns surrounding housing assignments, financial

6  arrangement, visitation, and other contact between prisoners that is usually restricted. *Id*. at ¶8.

7  Thus, Defendants have provided ample evidence that the prison regulation prohibiting fellow

8  prisoners from marrying each other is reasonably related to legitimate penological interests. The

9  Court finds Plaintiff's  allegations otherwise unpersuasive. Therefore, the first factor favors

10  Defendants.

11      Second, the Court must examine whether there are alternative means by which the

12  prisoner may exercise the right allegedly infringed by the prison regulation. *Turner*, 482 U.S. at

13  90. Defendants have conceded that there are no alternative means by which Plaintiff may

14  exercise his right to marry a fellow prisoner. Thus, because Plaintiff has no ready alternatives to

15  engage in his alleged right to marry a fellow prisoner, the second factor favors Plaintiff.

16      Third, the Court considers what impact of accommodating Plaintiff's request would have

17  on the prison, prison staff, and fellow prisoners. Defendants have provided evidence that

18  accommodating marriage between fellow prisoners would deplete prison resources because

19  Defendants would have to take significant additional considerations into account, including

20  housing assignments, financial arrangements between prisoners, prison correspondence, and

21  other contact between prisoners. Defendants also argue that the facilitation of the marriage itself

22  would be problematic because the resources needed to transfer prisoners for the ceremony,

23  accommodate the ceremony itself, and then ensure the prisoners are not later housed together

24

1  would be extensive. *See* Dkt. 50, p. 6. Though Defendants have not provided evidence of the

2  specific cost of allowing prisoners to marry, Defendants have provided evidence it would have a

3  significant impact on both prison officials and the prison itself if officials were required to

4  transfer prisoners between facilities for a marriage ceremonies, provide those ceremonies

5  including witnesses and officiants, and subsequently transfer the prisoners again in order to

6  ensure they are not housed together. *See* Dkt. 51-1, pp. 6-9 (explaining the DOC's policy

7  regarding the marriage ceremony itself). Plaintiff has provided nothing to indicate

8  accommodating his request would not have a significant impact on prison operations. Therefore,

9  the Court finds the third factor weighs in favor of Defendants.

10       Finally, the Court considers whether there are any ready alternatives that would fulfill

11  Defendants penological interest while also accommodating Plaintiff's request. *Turner*, 482 U.S.

12  at 90. Plaintiff must show that any alternatives would have a "*de minimis* cost to valid

13  penological interests." *Id*. Here, Plaintiff has not provided evidence indicating that there is a

14  ready alternative that would support Defendants' legitimate penological interest in ensuring the

15  safety and security of the prison and fellow prisoners. Though one alternative would be to simply

16  allow prisoners to marry each other, that alternative would not include a de minimis cost for the

17  reasons described above. Because Plaintiff has not provided any other ready alternatives that

18  would both support Defendants' legitimate penological goals and allow Plaintiff to marry a

19  fellow prisoner, the Court finds that the fourth factor also weighs in favor of Defendants.

20       The Court finds the marriage policy is reasonably related to a legitimate penological

21  interest, accommodation of Plaintiff's request would have significant impact on the prison and

22  prison officials, and Defendants do not have any ready alternatives to effectuate their legitimate

23  penological interest. Therefore, the Court finds that *Turner* ultimately weighs in favor of

24

1 Defendants. Accordingly, the Court recommends Defendants' Motion be granted as to Plaintiff's

2 Fourteenth Amendment equal protection claims.

3        B.   Retaliation Claim

4        Plaintiff alleges Defendants retaliated against him for filing a marriage application to get

5 married to a fellow prisoner. To prevail on a retaliation claim, a plaintiff must prove the

6 defendant retaliated against him for exercising a constitutional right and the retaliatory action did

7 not advance legitimate penological goals or was not narrowly tailored to achieve such goals.

8 *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997). A prisoner suing a prison official under §

9 1983 for retaliation must allege "the type of activity he engaged in was protected under the first

10 amendment and that the state impermissibly infringed on his right to engage in the protected

11 activity." *Rizzo v. Dawson,* 778 F.2d 527 (9th Cir. 1983)*.* For the purposes of Plaintiff's

12 retaliation claim, the Court will assume a prisoner may raise a claim under the First Amendment

13 for retaliating against the prisoner's right to marry. *See Sample v. Borg*, 675 F. Supp. 574, 579

14 n.15 (E.D. Cal. Dec. 14, 1987), *vacated on other grounds*, 870 F.2d 563 (9th Cir. 1989) (noting

15 that *Turner* dealt with both "non-religious as well as religious First Amendment rights,"

16 including the right to marry).

17        Within the prison context, a viable claim of First Amendment retaliation entails five
18        basic elements: (1) An assertion that a state actor took some adverse action against
         an inmate (2) because of (3) that prisoner's protected conduct, and that such action
         (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action
19        did not reasonably advance a legitimate correctional goal.

20 *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

21        To determine whether a defendant's actions were "because of" a prisoner's protected

22 conduct, the Court may examine either direct or circumstantial evidence, including the timing of

23 the alleged adverse action, a defendant's expressed opposition to Plaintiff's speech, or "other

24 evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and

pretextual." *McCollum v. California Dep't of Corr. and Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)). However, under *Wood v. Yordy*, "[m]ere speculation that defendants acted out of retaliation is not sufficient." 753 F.3d 899, 905 (9th Cir. 2014). In *Wood*, a prisoner alleged prison officials were retaliating against him for winning on an appeal, and produced evidence of isolated statements of dislike from prison staff and a memo stating "we cannot make it appear that an inmate can win." *Id*. at 901, 904. The Ninth Circuit held even that did not raise the prisoner's claims above the speculative level. *Id*. at 905.

Here, Plaintiff has not produced evidence showing Defendants retaliated against him for protected conduct. Plaintiff alleges he filed a request for a marriage license to marry a fellow prisoner, and in response, Defendants transferred him to a different facility, placed him in segregation, and instituted a "keep separate" order to ensure Plaintiff and his intended spouse would not be housed together. Dkt. 1. As has been noted above, Plaintiff's right to marry in prison is not absolute. *See Turner*, 482 U.S. at 95 ("The right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration"). The Court has already found that the regulation restricting marriage between fellow prisoners is not unconstitutional because, though Plaintiff retains the right to marry in prison, that right is necessarily restricted because of the fact of his incarceration. The Court has not found any precedent indicating that filing a marriage application to marry a fellow prisoner is a fundamental right under the Constitution. Thus, the Court finds that, insofar as Plaintiff's alleged protected right was attempting to file an application to marry his fellow prisoner, Plaintiff was not engaging in protected conduct.

Further, a retaliation claim is not plausible if there are "more likely explanations" for the action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681; *Pratt*, 65 F.3d at 808. Aside from Plaintiff's

1    bare allegations, Plaintiff has not provided evidence to suggest Defendants had retaliatory motive

2    when they transferred Plaintiff or placed him in segregation. Rather, Defendants have provided a

3    "more likely" explanation that Plaintiff's transfer, segregation, and "keep separate" orders were

4    all responses to Plaintiff potentially engaging in sexual conduct with another prisoner – a serious

5    prison violation. *See* Dkt. 51, Stewart Decl., ¶6. Defendants argue they acted in order to prevent

6    violations of prison rules, violations under the Prison Rape Elimination Act, and to ensure

7    Plaintiff did not take advantage of a more vulnerable prisoner. *See* Dkt. 50, p. 8 (citing Dkt. 51,

8    Stewart Decl., ¶¶ 6-7). Insofar as Plaintiff alleges Defendants transferred him and placed him in

9    segregation because he was engaging in protected conduct, the Court finds that Plaintiff has not

10    provided evidence of his allegations and finds further that Defendants have provided evidence of

11    a "more likely" explanation in the form of protecting fellow prisoners and preventing PREA

12    violations.

13            In addition, the Court has already found that Defendants' policy is reasonably related to a

14    legitimate penological interest, in part because it is designed to prevent prisoners from engaging

15    in sexual conduct, to ensure PREA violations are avoided, and to ensure prisoners do no coerce

16    other prisoners into marriage thereby placing them in an additionally vulnerable situation. *See*

17    Section III(A)(3) *supra*. Thus, the Court also finds Plaintiff's placement in segregation and

18    transfer to a new facility in order to ensure he did not have sexual contact with another prisoner

19    and to ensure he was not coercing the fellow prisoner into marriage are similarly reasonably

20    related to a legitimate penological interest. As noted above, Plaintiff has provided no evidence to

21    indicate Defendants actions were other motivated by any retaliatory intent. *See* Section III(B).

22

23

24

REPORT AND RECOMMENDATION - 12

1    Therefore, even reading the facts in the light most favorable to Plaintiff, the Court finds

2  Plaintiff has not shown Defendants' actions constitute retaliation. Accordingly, the Court

3  recommends Defendants' Motion be granted and Plaintiff's retaliation claims be dismissed.

4    C.  <u>Eighth Amendment Conditions of Confinement</u>

5    To state a claim for unconstitutional conditions of confinement, a plaintiff must allege

6  Defendant's acts or omissions have deprived the inmate of "the minimal civilized measure of

7  life's necessities" and the defendant acted with deliberate indifference to an excessive risk to

8  inmate health or safety. *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (quoting *Farmer v.*

9  *Brennan*, 511 U.S. 825, 834 (1994)). "The circumstances, nature, and duration of a deprivation

10  of [ ] necessities must be considered in determining whether a constitutional violation has

11  occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000), *cert. denied*, 532 U.S. 1065

12  (2001). In addition, in order to violate the Eighth Amendment, the prison official must have a

13  "sufficiently culpable" state of mind, meaning the official acted with deliberate indifference to

14  the health or safety of Plaintiff. *Farmer*, 511 U.S. at 834.

15    Here, the marriage policy does not amount to the deprivation of the minimal civilized

16  standards afforded to prisoners. Courts have repeatedly held that, though a prisoner's right to

17  marry survives incarceration, it may still have substantial limitations placed on it so long as the

18  limitations further a legitimate penological interest. *See Turner*, 482 U.S. at 96-97; *Gerber v.*

19  *Hickman*, 291 F.3d 617, 621 (9th Cir. 2002). Plaintiff does not cite and the Court has not found

20  any precedent indicating a regulation that prohibits fellow prisoners from marrying each other

21  constitutes a violation of the "minimal civilized standards" captors are required to provide

22  prisoners. Further, the Court has already found the policy is reasonably related to a legitimate

23  penological interest.

24

1    In addition, Plaintiff includes allegations in his supplemental briefing that, in addition to

2    the marriage policy, Plaintiff was subjected to unlawful conditions of confinement when he was

3    placed in segregation, including keeping the lights on 24 hours per day. *See* Dkt. 69, p. 6.

4    However, the Court notes that Plaintiff did not include such allegations in his Complaint. Dkt. 1.

5    Rather, his Complaint focuses solely on the marriage policy and his medical and mental health

6    treatment when he was in segregation. *Id*. New claims cannot be raised for the first time in an

7    opposition to a motion for summary judgment. *See Navajo Nation v. United States Forest Serv.*,

8    535 F.3d 1058, 1080 (9th Cir. 2008) (parties generally cannot assert facts and legal theories

9    raised for the first time at the summary judgment stage). Therefore, the Court will not make a

10   determination as to these new claims, which Defendants have not had an opportunity to respond

11   to.

12       D.  Eighth Amendment Deliberate Indifference

13       Plaintiff also appears to allege that Defendants knew of, yet ignored, Plaintiff's serious

14   medical need, thus treating his serious medical need with deliberate indifference. A medical need

15   is serious "if the failure to treat the prisoner's condition could result in further significant injury

16   or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (*quoting*

17   *Estelle*, 429 U.S. at 104). If a plaintiff shows he suffered from a serious medical need, he must

18   then show the prison officials responded to the need with deliberate indifference. *See Farmer*,

19   511 U.S. at 834. Deliberate indifference to a prisoner's serious medical need requires "a

20   purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In

21   other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or

22   possible medical need." *Id*. A prison official, accordingly, will not be found deliberately

23   indifferent to a prisoner's serious medical needs "unless the official knows of and disregards an

24

1  excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be

2  aware of facts from which the inference could be drawn that a substantial risk of serious harm

3  exists, and he must also draw the inference." *Id.* Further, a difference of opinion between an

4  inmate and medical authorities regarding proper medical treatment does not give rise to a § 1983

5  claim. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

6        Plaintiff alleges that the denial of his marriage request placed him in extreme mental

7  anguish, caused him to become depressed, and caused him to contract several other mental and

8  physical ailments, for which he was denied treatment. *See* Dkt. 1, p. 6. Plaintiff has clarified in

9  his supplemental briefing that his care was allegedly denied for several months until he was

10  transferred to the Coyote Ridge Corrections Center ("CRCC"), and only then did he receive any

11  sort of care. Dkt. 69, p. 2. Plaintiff has provided an affidavit indicating he notified Defendants of

12  his mental and physical health issues, but that they continued to hold him in segregation without

13  treatment. Dkt. 69, p. 19.

14        The parties have both provided evidence that Plaintiff did request treatment after his

15  marriage application was denied. He requested mental health medications on July 20, 2014,

16  while he was in segregation at the Clallam Bay Corrections Center ("CBCC"). Dkt. 67-1, p. 26;

17  Dkt. 69, p. 22. In responding on July 21, 2014, a medical provided recommended that Plaintiff

18  wait until he was transferred to his new facility before starting on psychotropic medications. *Id*.

19  However, the medical professional also stated: "If you would like a meeting with a mental health

20  provider to discuss your stress let me know." *Id*. Plaintiff did not make any additional requests

21  for treatment until July 29, 2014, the day before Plaintiff was transferred out of CBCC. Dkt. 67-

22  2, p. 27; Dkt. 69, p. 23. Plaintiff again requested mental health care, asking for a referral since he

23  had been "denied . . . here at CBCC." Dkt. 67-2, p. 27; Dkt. 69, p. 23. Despite having made no

24

additional requests for care, Plaintiff also stated he was being deprived of the "mental health care [he is] legally entitled to," and was "going to seek redress for the unconstitutional act." *Id*. The record shows - these were the only two requests Plaintiff made while at the CBCC.

On July 30, 2014, Plaintiff was examined upon intake at the Washington Corrections Center ("WCC"), and it was noted that Plaintiff was depressed. Dkt. 67-1, p. 28. On August 11, 2014, while at WCC, Plaintiff was evaluated by a psychologist, who deferred Plaintiff's diagnosis. *Id*. at p. 31. When Plaintiff was transferred to the CRCC on August 14, 2014, it was again noted upon intake that Plaintiff had untreated depression, and he was referred to the mental health department. Dkt. 67-1, p. 32. In response to a request from Plaintiff on August 31, 2014, Plaintiff was scheduled for a psychological evaluation for the Washington State Indeterminate Sentencing Review Board. *Id*. at p. 36. Finally, on September 9, 2014, Plaintiff was seen by a mental health professional who prescribed Plaintiff an antidepressant medication. *See* Dkt. 67-1, pp. 38-39.

The record reflects Plaintiff continued taking his medication and reported improved mental health to the point that Plaintiff requested his depression medication be discontinued on October 13, 2014. Dkt. 67-1, p. 46. At that time, a mental health provider indicated that Plaintiff's "complaints of depression and anxiety from early September 2014 are quickly subsiding." *Id*. at p. 47. The mental health provider also indicated Plaintiff's "symptoms appear to be transient and temporary and it is believed that he will only need mental health services for a short duration of time." *Id*. at p. 50. The record confirms Plaintiff was no longer taking depression medication as of November 19, 2014. Dkt. 67-1, p. 51; Dkt. 69, p. 28. In addition, though Plaintiff alleges he suffered from stomach pain and other physical ailments in connection to being denied his marriage license, the record reflects that he sought treatment for stomach

1    pain, but not that he sought treatment for other physical ailments connected to the denial of his

2    marriage license. *See* Dkt. 67-1, p. 44 (noting Plaintiff no longer complains of stomach pain);

3    Dkt. 69, p. 23 (complaining of upset stomach).

4        The Court does not find Plaintiff received deliberately indifferent care. Initially, Plaintiff

5    does not specify how Defendants' actions constituted deliberate indifference in his Complaint.

6    Indeed, his only claim that could be construed as an Eighth Amendment violation states in its

7    entirety: "I begged for medical care, for my physical and mental conditions as stated above [in

8    Plaintiff's Complaint]. *I was seen by mental health after I had been transferred.*" Dkt. 1, p. 6

9    (emphasis added). Thus, Plaintiff's Complaint does not, on its face, indicate Plaintiff received

10   inadequate care, and states that he did in fact receive treatment.

11       Nonetheless, in Plaintiff's supplemental briefing, Plaintiff specifies that he was denied

12   mental health care when he was held in segregation, and was not provided mental health care

13   until "months later." Dkt. 69, p. 2. The record reflects that a prison official recommended that

14   any new psychotropic medications be deferred until Plaintiff was transferred to his new

15   institution. However, that medical official also noted Plaintiff could request to see a medical

16   provider despite her recommendation. Plaintiff did not again request treatment until the day

17   before he was transferred out of CBCC. Further, Plaintiff was evaluated during both of his

18   transfers and was seen by a psychologist on August 11, 2014. Though the psychologist did not

19   render a mental health diagnosis, she examined Plaintiff and noted Plaintiff's diagnosis was

20   "deferred at this time." Dkt. 67-1, p. 31. Plaintiff's next request for treatment was not until

21   August 31, 2014. Ultimately, Plaintiff was later examined by a psychologist who provided him

22   with depression medications, which he elected to discontinue after six weeks.

23

24

REPORT AND RECOMMENDATION - 17

1      Thus, Plaintiff has not shown that Defendants knew of, yet failed to treat, Plaintiff's

2  serious medical need. Plaintiff has provided evidence that he requested medical treatment on

3  three occasions, he was evaluated during both of his transfers, he saw a psychologist at WCC,

4  and he was eventually examined by another psychologist at CRCC who prescribed him

5  depression medication. The Court does not find that requesting treatment three times, receiving

6  evaluations, and receiving treatment for a temporary depressive state constitutes deliberate

7  indifference to a serious medical need. *See Simmons v. Navajo County, Ariz.*, 609 F.3d 1011,

8  1018-19 (9th Cir. 2010) (a prisoner's failure to show a nurse knew of, yet disregarded, his

9  suicidal state did not constitute deliberate indifference);

10      Therefore, the Court finds Plaintiff has failed to show that any named Defendants knew

11  of, yet failed to address, Plaintiff's serious medical needs. Accordingly, the Court recommends

12  Defendants' Motion (Dkt. 50) be granted and Plaintiff's Eight Amendment claims be dismissed.

13      E.  Qualified Immunity

14      Defendants also argue they are entitled to qualified immunity. However, the Court has

15  already made a determination on the merits of all of Plaintiff's claims and has recommended

16  they be dismissed. Therefore, the Court declines to make a determination as to qualified

17  immunity here.

18                              **CONCLUSION**

19      Based on the foregoing, the Court concludes Plaintiff has failed to show any of his

20  constitutional rights were violated. Accordingly, the Court recommends Defendants' Motion

21  (Dkts. 50, 66) be granted and Plaintiff's action dismissed.

22      Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

23  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

24

REPORT AND RECOMMENDATION - 18

6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on February 15, 2019, as noted in the caption.

     Dated this 29th day of January, 2019.

David W. Christel
United States Magistrate Judge